# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN F. PRINKEY, | ) | |
| | ) | |
| v. | ) | 02: 10-cv-01249 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

July 14, 2011

## I. Introduction

Plaintiff, Susan F. Prinkey ("Plaintiff"), brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied her application for supplemental security income ("SSI") benefits under title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f.

## II. Background

### A. Facts

Plaintiff was born on July 11, 1955 and was 54 years of age on the date of her administrative hearing. She is a high school graduate and has an associate degree in business management from Westmoreland County Community College. R. 31. Plaintiff last worked in the late 1990s as a clerk at Ames Department Store where she ran a cash register, stocked shelves and set up/dismantled store displays. R. 33. The Vocational Expert testified that Plaintiff's job would be classified as a compound job. R. 44. Plaintiff's cashier duties

1

would be classified as an unskilled light duty and her duties as a store laborer would be classified as an unskilled medium duty. R. 44.

Plaintiff alleges disability as of October 31, 2008, due to pain in her left shoulder, arthritis in her ankle and high cholesterol. Plaintiff has not engaged in gainful activity since October 31, 2008, the date of her SSI application.

B.  Procedural History

Plaintiff initially filed an application for SSI on October 31, 2008, the date on which she alleges her disability began. Her claim was denied at the initial level of administrative review and thereafter Plaintiff filed a timely request for a hearing. An administrative hearing was held on October 27, 2009, before Administrative Law Judge Raymond J. Zadzilko ("ALJ"). Plaintiff was represented by counsel and testified at the hearing. Mitchell A. Schmidt, an impartial vocational expert ("VE"), also testified at the hearing.

On November 9, 2009, the ALJ rendered an unfavorable decision to Plaintiff in which he found that Plaintiff had the residual functional capacity to perform a wide range of light exertional activities, with certain restrictions, and, therefore, was not "disabled" within the meaning of the Act. The ALJ's decision became the final decision of the Commissioner on August 9, 2010, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.

On September 27, 2010, Plaintiff filed her Complaint in this Court in which she seeks judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment.  Plaintiff contends that the ALJ erred in not properly evaluating

Plaintiff's left upper extremity impairments and that the ALJ's decision is not supported by substantial evidence. The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence. The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

**III.    Legal Analysis**

A.    <u>Standard of Review</u>

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g); 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec.,* 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant

work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Burnett v. Comm'r of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,

> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at

777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act after the completion of the sequential evaluation process. In making this determination, the ALJ concluded that Plaintiff could engage in substantial gainful employment on a full time basis.

B. Discussion

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec.,* 181 F.3d 429, 431 (3d Cir. 1999).

In his decision, the ALJ concluded that Plaintiff suffered from a severe impairment of a left shoulder rotator cuff tendinosis with a small partial tear. R.14. Additionally, the ALJ found that Plaintiff must never crawl or climb ladders, ropes or scaffolds; was limited to reaching no higher than shoulder level; must never work around unprotected heights or moving machinery; and must avoid concentrated exposure to wetness and vibration. Despite this impairment and conditions, the ALJ determined that Plaintiff was capable of engaging in substantial gainful employment on a full-time basis because Plaintiff's impairment limited her to light work requiring only occasional postural maneuvers such as stooping, kneeling, crouching, bending, and climbing ramps and stairs.

Based upon the testimony of the VE, the ALJ found that Plaintiff could perform light work and that such opportunities existed for Plaintiff in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

Plaintiff challenges the determination of the ALJ in a number of areas. Specifically, Plaintiff contends that (1) the ALJ failed to properly evaluate her left upper body extremity impairment and (2) the ALJ failed to give controlling weight to the opinion of Plaintiff's treating and examining physicians.

> *A. The decision of the ALJ that Plaintiff does not have severe impairments under Listing 1.00 is supported by substantial evidence.*

At step three of the sequential evaluation process, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Plaintiff argues that the ALJ erred when he determined that Plaintiff's severe impairment did not meet the criteria listed under Listing 1.00, entitled musculoskeletal system and rejected the opinions of the treating and medical source physicians. This Court finds no such error.

In order to be considered disabled at step three of the sequential evaluation process, a Plaintiff's impairment or impairments must meet or medically equal an impairment listed in the Regulations. *Williams v. Sullivan,* 970 F.2d 1178, 1186 (3d Cir. 1992). " 'For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Williams,* 970 F.2d at 1186 (quoting *Sullivan v. Zebley,* 493 U.S. 521, 529-30)(emphasis in original).

More specifically, in order to establish a disability under Listing 1.00, a plaintiff must satisfy the loss of function definition, as well as the supporting criteria. Under this section, loss of function may be due to bone or joint deformity or destruction from any cause. Listing 1.00B(1). Listing 1.00 provides in relevant part:

> 1.00B(a). General. Regardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as . . . the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment. The inability . . . to perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months. For the purposes of these criteria, consideration of the ability to perform these activities must be from a physical standpoint alone.

> 1.00B(c). What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means

an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

The ALJ determined that while Plaintiff had a left shoulder rotator cuff tendinosis with a small partial tear, the medical evidence of record did not contain the objective signs, symptoms or findings, nor the degree of functional restriction, necessary for the Plaintiff's impairments, considered singly or in combination, to meet or medically equal in severity any section of Listing 1.00 or any section of any other listing contained in Appendix 1, Subpart P, Regulations No. 4. R.14. Upon review of the record, it is clear to the Court that substantial evidence supports the decision of the ALJ. The ALJ fully considered the medical evidence of record and articulated the basis of his decision. Specifically, he noted that the State agency adjudicator had considered Plaintiff's impairments either singly or in combination and that the adjudicator determined that such impairments did not meet or medically equal in severity any section of the Listing of Impairments. R 14. Additionally, the ALJ found that Plaintiff's course of treatment did not support her subjective complaints of disabling pain. R.16.

The Court finds that the decision of the ALJ with regard to Plaintiff's shoulder limitations is supported by substantial evidence.

> B. *The decision of the ALJ with regard to Plaintiff's Residual Functional Capacity is supported by substantial evidence.*

After careful consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b). Plaintiff argues that the ALJ erred: (1) When he failed to give proper weight to the medical opinion of Plaintiff's treating physician Dr. Selim El-Attrache, (2) When he failed to give proper weight to the medical opinion of Dr. Mamoon Al Rasheed, who is Plaintiff's regular doctor and (3) When he improperly relied upon Plaintiff's activities of daily living to discredit her subjective complaints. Pl.'s Br. at 3-4.

Specifically, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's left upper extremity impairments when the ALJ found her subjective complaints of pain and limitations to be not entirely credible. Plaintiff first asserts that the medical notes of Dr. Rasheed and Dr. El-Attrache, the two Doctors who regularly examined and treated for her shoulder pain, consistently point to limitations which would prevent Plaintiff from engaging in substantial gainful activity on a full time basis. Pl.'s Br. at 8-9. Plaintiff alleges that the ALJ failed to indicate what medical evidence of record contradicted the findings of Plaintiff's disabling pain from these doctors and allowed for a determination that the opinions of these doctors were entitled to little weight. Pl.'s Br. at 9. This Court finds no such error.

In making an RFC assessment, an ALJ must do more than simply state factual conclusions, he must make specific findings of fact to support his ultimate findings. *Stewart*

*v. Sec. of HEW,* 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence in the record and must provide adequate explanations if he disregards or rejects objective medical evidence. *See Wier of Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981). He must also give serious consideration to a Plaintiff's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence. *See Mason v. Shalala,* 994 F.2d 1058, 1067-68 (3d Cir. 1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir. 1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a Plaintiff from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (*relying on Green v. Schweiker,* 749 F.2d 1066, 1068 (3d Cir. 1984)); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Comm'r of Soc. Sec.,* 181 F.3d 429, 433 (3d Cir. 1999) (relying on *Dobrowolsky*).

When a medical impairment that could reasonably cause the alleged symptoms exist, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which she is disabled by it. *See* 20 C.F.R. § 404.1529(c); *Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999). However, the Third Circuit has acknowledged that the record may

contain conflicting medical evidence. *See Cotter,* 642 F.2d at 705 (stating that "when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them.") The sole restriction on the ALJ's assessment of the evidence is that the "ALJ cannot reject evidence for no reason or the wrong reason." *Id*. at 706.

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be reflected in his decision. *See Id.* at 705. The Court of Appeals for the Third Circuit has stated,

> in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work.

*Schaudeck,* 181 F.3d at 433. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain without contrary medical evidence. *Chrupcala v. Heckler,* 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Ferguson vs. Schweiker,* 765 F.2d 31, 37 (3d Cir. 1985); *Akers v. Callahan,* 997 F. Supp. 648, 658 (W.D. Pa. 1998). In making his determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his reasons for rejecting such supporting evidence. *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 119-20 (3d Cir. 2000).

With respect to the opinions of treating physicians, the United States Court of Appeals for the Third Circuit has held that an opinion of a treating physician may be entitled to great weight-considered conclusive unless directly contradicted by evidence in a Plaintiff's medical record-particularly where the physician's findings are based upon "continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.,* 554 F.3d 352, 355 (3d Cir. 2008); *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999)(citing *Rocco v. Heckler,* 826 F.2d 1348, 1350 (3d Cir. 1987)). However, a showing of contradictory evidence and an accompanying explanation will allow an ALJ to reject a treating physician's opinion outright, or accord it less weight. *Brownawell,* 554 F.3d at 355. Further, the determination of disabled status for purposes of receiving benefits, a decision reserved for the Commissioner only, will not be affected by a medical source simply because it states that a Plaintiff is "disabled," or "unable to work." 20 C.F.R. §§ 404.1527(e). 416.927(e). Finally, a plaintiff's report of activities of daily living are relevant evidence of plaintiff's functional capacity and are certainly relevant in determining credibility. *See Burns v. Barnhart,* 312 F.3d 113, 129-30 (3d Cir. 2002); *Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999); 20 C.F.R. §§ 404.1529, 416.929.

In the instant case, with respect to the ALJ's credibility determination of Plaintiff's complaints of pain, the record makes clear that the ALJ carefully considered the entire record and applied the proper analysis in determining Plaintiff's maximum residual capacity. R. 15-17. In fact the ALJ specifically considered Plaintiff's description of her symptoms in light of the objective medical record evidence. To that end, the ALJ noted that Plaintiff did

not report any shoulder pain or related symptoms in December 2008, that she used only non-steroidal anti-inflammatory drugs, that during her last visit with Dr. MacPhil, Plaintiff's original doctor prior to his moving, in April 2009, Dr. MacPhil noted that Plaintiff's pain only occurred with dampness and cold weather, that her activities of daily living were improving and that her left shoulder was capable of full elevation and it internally rotated to T10. Further, in October 2009, Dr. El-Attrache reported that Plaintiff could engage in light work with restrictions. R. 15-16.

Unfortunately, Plaintiff fails to provide persuasive evidence as to which of the findings above supported a conclusion that Plaintiff was not capable of engaging in substantial gainful employment on a full-time basis, and fails to acknowledge that none of the doctors made specific findings which support Plaintiff's subjective complaints of limitation. As noted by the ALJ, Plaintiff's physicians, Dr. MacPhail and Dr. El-Attrache both found that Plaintiff could engage in light work with restrictions R. 16. The medical records of Dr. MacPhail also reflect that Plaintiff's condition was gradually improving over time. R. 16. Plaintiff's own testimony reflects that she consistently engages in a number of daily activities and takes care of her husband, her son, and her cats. R. 17.

The ALJ relied upon Plaintiff's own statements as to her regular activities, as well as the objective medical evidence in finding that Plaintiff's limitations were not as severe as her subjective complaints would indicate. R. 17. Indeed, the ALJ in his RFC appeared to adequately accommodate for Plaintiff's stated limitations (ie., that she should not be required

to crawl on the job but occasionally could use ramps or stairs, stoop, kneel, crouch or bend) and in the hypothetical to the VE. R. 15.

While it is clear from the record that Plaintiff's impairments do result in some functional limitations, Plaintiff has failed to adduce sufficient evidence which supports her allegations that the RFC as determined by the ALJ does not adequately accommodate such limitations.

> C.  *Substantial evidence supports the determination of the ALJ that Plaintiff can perform light duty work with restrictions.*

At Step 5 of the sequential evaluation, the ALJ determined that there were light duty jobs that exist in significant numbers in the national economy that Plaintiff can perform. Plaintiff argues that her impairments functionally limit her to sedentary work. Plaintiff also argues that she is disabled under Grid Rule 201.12 and that the ALJ erred when he found differently. Pl.'s Br. at 12. The Court finds no such error.

Step five of the sequential evaluation process requires that the ALJ determine whether there are jobs in the economy that a claimant is capable of performing, based on an assessment of the claimant's residual functional capacity, age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c)(2). The ALJ bears the burden at this stage to show that there are jobs the claimant can perform. *Id.; Ramirez v. Barnhart,* 372 F.3d 546, 551 (3d Cir. 2004). The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step five is frequently based in large measure on testimony provided by the vocational expert, as it was in this matter. *Rutherford,*

99 F.3d at 553 (*citing Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir. 1984))(citations omitted).

Where a hypothetical question to the vocational expert accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the VE's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings as to claimant's residual functional capacity. *See, e.g., Burns v. Barnhart,* 312 F.3d 113, 123 (3d Cir. 2002) (*citing Podedworny,* 745 F.2d at 218, and *Chrupcala v. Heckler,* 829 F.2d 1276 (3d Cir. 1987)); *see also Plummer,* 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience, and residual functional capacity); *Boone,* 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'") Because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala,* 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny,* 745 F.2d at 218.

Here, the ALJ asked the vocational expert the following hypothetical at the administrative hearing:

> Q: Okay. I'd like you to consider a hypothetical, somebody with the Claimant's age, education, training, and work experience. Assume no more than a light maximum residual functional capacity. May lift and carry 20- - up to 20 pounds - - including 20 pounds occasionally, up to and including 10 pounds frequently. Should not be required to crawl on the job but may occasionally use ramps or stairs, stoop, kneel, crouch, or bend. Should not be required to use ladders, ropes, scaffolding, be at unprotected heights, around moving machinery, and, as I mentioned before, no crawling. Reaching is limited to shoulder height, should avoid concentrated exposure to wetness and vibration. Assuming these limitations, could a person perform the Claimant's job at Ames either as she describes it or as in the national economy?
>
> A: Well, because it's a compound job, I guess I have to look at the totality of the job. So looking at it in the totality either- - because it doesn't sound like it was segregated into days or weeks of primarily cashiering or predominantly cashiering and into the store laborer so viewing it that way, no, it could not be performed either as she performed it or as it was performed in the national economy. . . .
>
> Q: Okay. Would there be any other jobs of an unskilled nature at light which could be done with a person with this particular residual functional capacity.
>
> A: Yes. . .

R. 44-45. The vocational expert proceeded to identify the following representative examples of jobs in the national economy for individuals with these limitations: garment sorter, fruit cutter and folder. *Id.*

The Court finds that substantial evidence supports the ALJ's determination at step five, given the testimony of the vocational expert at the administrative hearing, including the response to the hypothetical posed by the ALJ which adequately addressed Plaintiff's limitations. The testimony of a vocational expert, whose expertise Plaintiff's counsel stipulated to, is substantial evidence from which the ALJ could determine that Plaintiff was

able to perform light work. Moreover, as discussed above, the RFC as determined by the ALJ is supported by substantial evidence. Therefore, the hypothetical question, which included all of Plaintiff's limitations as found by the ALJ is adequate. *See Rutherford,* 399 F.3d at 554 n. 8 (noting that attacks on a hypothetical question very often "boil down to attacks on the [residual functional capacity] assessment itself"). Indeed, because the ALJ's hypothetical included the very limitations noted by Plaintiff's doctors in the medical records, the Court finds that said hypothetical adequately reflected the limitations as reflected in the record medical evidence. *Burns v. Barnhart,* 312 F.3d 113, 123 (3d Cir. 2002).

## IV. Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that she is able to perform a wide range of light exertional jobs.

The Court has reviewed the ALJ's findings of fact and decision, and determines that the finding that Plaintiff was not disabled under the Social Security Act is supported by substantial evidence. The ALJ provided sufficient justification from the medical record and from Plaintiff's personal testimony to allow this Court to conclude that substantial evidence supports the decision of the ALJ.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN F. PRINKEY | ) | |
| | ) | |
| v. | ) | 02: 10-cv-01249 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

## ORDER OF COURT

**AND NOW**, this 14th day of July, 2011, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. Plaintiff's Motion for Summary Judgment is DENIED.

2. Defendant's Motion for Summary Judgment is GRANTED.

3. The Clerk will docket this case as closed.

                BY THE COURT:

                s/Terrence F. McVerry
                United States District Court Judge

cc:     E. David Harr, Esquire
        Email: Dharresq@aol.com

        Albert Schollaert,
        Assistant U.S. Attorney
        Email: albert.schollaert@usdoj.gov